The third case for argument is United States v. Francis Dubray. All right, Mr. Pilcher, we'll hear from you first. Good morning. May it please the Court, my name is Aaron Pilcher. I'm appearing on behalf of the appellant, Francis Dubray. I'd ask to reserve two minutes for rebuttal. You may, but the clock will keep running, so you'll have to stop on your own.  Today, in our briefs we raised, depending on how you interpret the last issue, four or five issues, I'll say five issues, I would ask to discuss the first two issues that touch on the Sixth Amendment right to present a complete defense. The first part for, the first issue under that right to present a complete defense would be the exclusion of evidence, in this case, by the district court, 9-1-1 logs of activity at the address in question, the testimony of the sheriff in the area, and the limitation of cross-examination of a government witness regarding the placement of a security camera across the street, again, from the house in question. And for ease of reference, I will likely just say the house or the Thompson house. Mr. Dubray was convicted by a jury of burglary and aiding and abetting. That would be under the major crimes in the state statute in South Dakota. He was convicted of two counts of assault and aiding and abetting, and he was convicted, or excuse me, the jury acquitted him of the fourth or last count of witness tampering. The nature of a burglary charge under the South Dakota statute requires someone unlawfully enter or remain. And I'm asking the court in this case to essentially review the development of that statute, and through the case State v. Burdick, I believe we have a long, a substantive record of that development. In South Dakota, the initial burglary statute called for the entry, the unlawful entry or unlawfully remaining, with intent to commit any crime. Over the course of a series of cases, the State Supreme Court developed what I would call a limited license theory, the idea that when a person remains in a structure, even if it's open to the public, I'll get to the open to the public, that's a big part. If they commit a crime, the limited license essentially suggests that they are only there to be lawfully present. If they commit a crime, now they have violated the burglary statute. As the court in Burdick digested the development, it pointed out a handful of cases that were interesting. It caused trouble for some of the justices over time. One of the examples was an 11-year-old girl who took a piece of candy from a store. And granted, the procedure was different because it was a juvenile proceeding, but the issue became essentially for the adjudication, was this child in violation of the burglary statute? And the answer by the court was yes, because she took a piece of candy in the store. The legislature apparently reacted to that and changed the statute, said, well, we're not going to do petty theft. It didn't fully resolve the discrepancy. And so Burdick itself involved a milk delivery man at a little town called Plankington about two hours south of my office. And he had a garage door opener to the storage area, the back area of the grocery store, to drop off milk. In the course of his duties, he ended up grabbing pop in the storage area, carrying it away. This was third-degree burglary as opposed to first-degree burglary, but I'll suggest to the Court that if you look at the bill at the time, this was happening between 5 and 6. The legislature amended both of them at the same time with the same length, so it's the same analysis. The Court's decision in Burdick is instructive because the criminal case for Mr. Burdick and the appeal came just It was around the same time the legislature changed the statute. So the Court had to say explicitly, we have to interpret the case this way. But in the future, that's absolutely not going to be the case because the legislature added the language that you cannot essentially that burglary does not apply when a person can lawfully enter or remain. So now we have to examine, and it becomes the government's burden beyond a reasonable doubt, to show that the person in the room is essentially not lawfully present. And so now we get to the issue of open to the public, which is a big part of what I discussed in the lead-up to trial and trial in this brief. The development of occupied structure and open to the public are similar, but they are different. The exclusion of evidence specifically has to do with the relevance to the element of whether the structure was open to the public. Can I ask a question about that instruction? Yes, Your Honor. It's the second element in Instruction 10. The structure was not at the time open to the public, nor was the defendant licensed or privileged to enter or remain. So the government has to approve both of those? So is that we —  Help me understand sort of how those two — you said they're related, these two parts. But they're in one element of the offense. Can you tease that out a little bit? Yes, Your Honor. Thank you. Open to the public and occupied structure, I put forward, are two sides of the same coin. The question for occupied structure, there are a handful of cases in my brief involving one with a gentleman who got stranded or a couple of hitchhikers who got stranded and went to a house and an individual who broke into a garage when someone wasn't there. It's trying to assess what structure is included in that element, and those — and that case law specifically makes it an inclusive element. The government is authorized to take entry, unlawful entry, into a garage and make the whole thing a burglary. The other side of the coin takes an exclusionary approach, and we can call it lawful or permissible entry, whether an individual — Well, what if it was open to the public, but they weren't authorized or privileged — I'm sorry, licensed or privileged to remain? Could the jury still find a burglary? I'm sorry, Your Honor. Could you say that again? What if, as a factual matter, the jury said, well, I think it was open to the public, but I don't think that particular person, the defendant, was licensed or privileged to remain there? Thank you, Your Honor. No, I believe under the statutes that would not be a burglary. And the Supreme Court teases that out in a few cases where it suggests that any entry into a structure to commit a crime would amount to a burglary, whether you enter, again, a convenience store and commit a crime. Under the old legal regime, that would be a burglary. Under the amendments of 2005 and 2006 by the legislature, it is not. What does any of this have to do with our case? Thank you, Your Honor. In this case, we are talking — and I would like to reserve two minutes for —  If you may, if you wish, I just — Yes. We talked a lot about the history of the North Dakota or South Dakota burglary statute, but I thought you might want to address what the alleged error is here. I can do that quickly. But the time has expired. It's too late. I will happily address your question if the Court would — Well, go ahead. But you're running into your rebuttal time, so you can use it however you wish. In this case, the short answer is we were dealing with a drug house and a flophouse. The evidence that was excluded was a testimony of a sheriff who would say it was the public perception that it was open to the public for that purpose and just open to the public in general. The 911 logs would go to the nature of the home over time. The questioning of the neighbor with the security camera would go to further the nature of that home. So I have one minute, and I will happily address that. All right. You may reserve. Thank you. Thank you, Your Honor. Mr. Thunem, we'll hear from you. Thank you, Your Honor. May it please the Court. My name is Carl Thunem. I represent the United States in this matter. I'm here to request that this Court affirm the district court's judgments in this matter. I'll first address the issue Mr. Pilcher was, namely the exclusion of proffered evidence of a sheriff's testimony, of call logs, and of a neighbor's testimony. As Mr. Pilcher noted, this is only relevant to one element of the burglary conviction, namely whether Peggy Thompson's home was open to the public. As a preliminary matter, I would like to acknowledge I erred on my brief, and Mr. Pilcher is right that the standard of review here is de novo, because the appellant is challenging his right to, whether or not the exclusion of this evidence violated his right to present a complete defense. Of course, that de novo review is still of the district court's unquestioned broad constitutional prerogative to exclude evidence that is irrelevant, cumulative, or prejudicial. Wasn't there evidence that the garage, at least, was sort of open to anybody who wanted to come? Yes, there was, Your Honor. And so wouldn't some of this evidence be relevant as to whether that openness spilled over into the home itself? I don't believe so, Your Honor. The garage was a detached garage. Peggy Thompson testified that the homeless lived there, and it was open to the homeless that their home was not. Peggy Thompson's home, the back door was barricaded, the front door was locked. Mr. Griffin, one of Dupre's co-defendants, was over there earlier today, earlier that day on July 5th. He testified that, yes, you have to knock in order to come to this house, just like you would any other home. Counsel, does the record reflect how far in feet or yards or something? Does the record reflect how far in feet or yards or some distance measuring metric the garage was from the house? I believe that would either be on Exhibit 1 or might be visible from the security camera footage, but I don't recall. Well, and if there is, I read the testimony from the witness who said, yes, it's locked. But just because there's that testimony in the record, why couldn't the defendant put on testimony or evidence that countered that? I think the appellant could. The problem is here that even if you consider the evidence seduced at trial, as well as any — as well as the appellant's proffered evidence, it still wouldn't be sufficient to create a reasonable doubt that the home is open to the public. From the government's perspective, open to the public and licensed or privileged to remain are both affirmative defenses. How does that work? It's in your Instruction 10, right, that was given to the jury, and it's one of the elements. It's the structure was not open to the public, nor was the defendant licensed or privileged to remain there. That's correct, Your Honor. It is listed as one of the elements by the court over the government's objection. The government's position remains that these are best characterized as affirmative defenses insofar as they are exceptions within the statute itself. Is that — do we have to decide that here? I don't believe so, Your Honor, because, frankly, the proffered evidence simply wasn't relevant, either in and of itself or, when considered with other evidence seduced at trial, it only had a slight probative value. Accordingly, its prejudicial value substantially outweighed any probative value it had. Therefore, the district court did not err in excluding it. And did you have to prove then that it was — both that the structure was not open to the public and that the defendant was not licensed or privileged to remain there? Correct, Your Honor. Because the court gave that instruction and treated these as elements, those were two things the United States had to prove at trial. So if they were able to prove it was open to the public, acquittal? I believe that would be the appropriate outcome here, Your Honor. And so I guess what I'm trying to figure out is something can be open to the public, but you cannot be licensed or privileged to remain there. And so I'm trying to figure out how those two things go together. And maybe that's to your point that you think it's an affirmative defense that has a little different flavor to it. But I'm trying to figure out how that works. And I don't know if it's relevant unless it's relevant to whether there's any harm in excluding the evidence. I don't know the answer to that. I think you're correct, Your Honor. I think that would become a highly relevant issue were this proffered evidence that was excluded not properly excluded as irrelevant or under Rule 403. I would also like to turn to the – what about the evidence that was proffered? Was somebody going to come in and say, in my experience, this place was open to the public? Or was this just reports of – I thought it was reports of 911 calls or how many times there had been calls from the police and so forth. Can you describe the evidence, I guess, and why you think it was not relevant? I can, Your Honor. So with respect to the sheriff's proffered testimony, in pretrial feedings, the appellant claimed that that proffered testimony in combination with the 911 call logic would show that the home was abandoned, or the law enforcement considered the home abandoned, considered it a drug house, and multiple people lived there. Multiple people lived there. Correct. I don't know what you mean by drug house. I mean, drug house could mean a place where drugs are sold. That doesn't mean it's open to the public, but go ahead. At trial, when the time came for the sheriff to testify, however, the defendant only made an offer of proof that he would lay foundation for these 911 call logs. Accordingly, any testimony that the sheriff might or might not have offered was simply not properly preserved because there was no offer of proof made at trial as to what that testimony would be beyond foundation for the call logs. Okay. And you say the call logs were not relevant because why? So in reviewing the call logs, they're really primarily for calls for medical assistance, requests primarily from Peggy Thompson, referred to as the resident or the owner, to remove unruly guests. Many of them relate to blood in an elder's bowel movements and urine, serving papers. Peggy Thompson requesting people to be removed from her home. Intoxicated people around the home. There's a complaint of loud music. From the United States' perspective, they simply didn't show what the appellant reports they would show, namely that the home was open to the public. If anything, they would tend to militate towards the contrary, given Thompson's numerous requests that people be removed from her home, including ones who hadn't paid rent. All right. And how about the neighbor and the security cameras? What was the proffer? There was no proffer made on that, Your Honor. There's simply speculation by the appellant as to what his testimony likely would have been. There was no offer of proof. Correct. The United States called the neighbor to lay foundation for and introduce surveillance footage of the home. On cross-examination, then, the appellant asked, why did you install the security cameras? The United States objected. The district court sustained that objection, and the appellant made no offer of proof as to what that testimony would have been. Okay, thank you. So the call logs were not relevant. Even if they had some marginal or slight probative value, they nonetheless did tend to show that this house was something of a nuisance to its neighbors, something of a home where disorderly activities occurred on a fairly routine basis and therefore was properly excluded under Rule 403. Moreover, even if the district court abused, abused, or rather acted beyond the bounds of its wide discretion, any error was harmless beyond a reasonable doubt, given the overwhelming evidence that this home was not open to the public. The door was locked. Francis DuBray kicked, I'm sorry, Brian Taken alive. One of the co-defendants kicked in the door. You had Thompson's testimony to that effect. Griffin's testimony that the home was not one that people could freely enter. And you had Agent Stark's testimony that he observed damage to the door frame and a doorknob or bolt lying on the floor. Thank you. That concludes my time. All right. Thank you for your argument. We'll hear rebuttal. Thank you, Your Honor. With my remaining time, I turn to the jury instruction. Jury Instructions 10 and 11 detailed the open to the public. It was, as was suggested, the problem is it defined occupied structure and it did not define open to the public. One was inclusive. One was exclusive. We have a doctrine in law, inclusius, unius, excludius, ulterius. The jury was told that you can lump everyone together or all the structures together to make a burglary, but they were never told you can separate it out for public access. The issue with the home, we contended from the beginning, as was Avis Red Bear's testimony, this was not Ms. Thompson's home. She never, ever had a lease, as Ms. Thompson testified. She herself broke into the property. Ms. Thompson certainly pestered and damaged the property in order to occupy it, but it was not her position to exclude people. It wasn't her home to do that. My time has expired. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted.